Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7820 | **DATE** | 4/29/2002 |
| **CASE TITLE** | My Favorite Muffin, Too, Inc. vs. Maosheng Wu, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ☒ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies the Plaintiffs' additional demand for payment of $8,736.00 based on Lanham Act violations for the seven-month breach of the Court's preliminary injunction order. Thus, Summary Judgment is granted in part and denied in part. Status hearing set for May 14, 2002 at 9:00 a.m.

(11) ☒ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 30 2002 | 31 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 29 2002
Judge Harry D. Leinenweber
U. S. District Court

| | |
|---|---|
| MY FAVORITE MUFFIN, TOO, INC., a New Jersey Corporation, and BAB SYSTEMS, INC., an Illinois Corporation,<br><br>                  Plaintiffs,<br><br>v.<br><br>MAOSHENG WU and PICHU WU,<br><br>                  Defendants. | Case No. 00 C 7820<br><br>Hon. Harry D. Leinenweber |

DOCKETED
APR 30 2002

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending before the Court is plaintiffs', My Favorite Muffin, Too, Inc. & Bab Systems, Inc. (collectively "MFM"), Motion for Summary Judgment against Maosheng & Pichu Wu ("the Wus") for violations of the Trademark Statute (Lanham Act, 15 U.S.C. § 1051 et seq.), and unfair competition practices. Specifically, the plaintiffs ask this Court to 1) grant summary judgment, 2) place a permanent injunction against defendants prohibiting the use of MFM names and trademarks, 3) award judgment for royalties and marketing fees totaling $57,408.00, and 4) award attorney and court fees.

### BACKGROUND

MFM operates and establishes franchised muffin shops under a uniform system developed by MFM, including the right to use its registered trademarks and service marks. On April 2, 1996, MFM and

the Wus entered into a Transfer Agreement, in which the Wus inherited an MFN franchise from a previous franchisee. The Transfer Agreement was attached to the Franchise Agreement ("the Agreement") and outlined the franchisees' agreed responsibilities to pay royalties and franchise fees in exchange for the use of MFM's trademark and muffin manufacturing system for a shop at the Gwinnett Mall in Duluth, Georgia. In addition, as a condition of the Agreement, defendants executed a non-compete clause, wherein the Wus agreed not to operate a muffin shop or similar business for a period of two years within a twenty-five-mile radius of the franchised location or any other existing MFM shop after termination of the Agreement. *See* Plaintiffs' Motion for Summary Judgment, Ex. B, Franchise Agreement, Section 16.

The Wus, however, only actually signed the Transfer Agreement and failed to sign the Franchise Agreement itself. While the Wus argued that their failure to sign the Franchise Agreement violated the statue of frauds, the Court ruled on May 5, 2001, that the signing of the Transfer Agreement by the Wus effectuated the conveyance of the franchise as well, thus obviating the need for the Wus' signature on the Agreement itself. *See* Oral Ruling, May 1, 2001, Judge Leinenweber.

The Wus business was troubled from the start and soon fell behind on its financial obligations to MFM. MFM and the Wus then executed a Mutual Release, which forgave the Wus of any obligations

incurred prior to June 1, 1997, but required them to make scheduled monthly payments of $1,040.00 for royalty obligations and $208.00 for a marketing fund. All figures were based upon actual sales generated by the business records submitted by the Wus prior to May 1997, due to the failure of the defendants to submit monthly records as required by Section 5 of the Agreement. The Mutual Release governed the relationship from June 1997 until July 2000.

MFM argues that the Wus were in default for the entire life of the Agreement and of the Mutual Release. As such, MFM claims that the Wus' failure to cure its monthly royalty and market fund fees from June 1997 to February 2001, resulted in a $46.080.00 deficit. MFM thus terminated the Agreement and accordingly notified the Wus by letter on July 22, 2000. MFM alleges, however, that the Wus continued to operate a muffin shop in the exact same location, violating the non-compete clause of the Agreement. Pursuant to Sections 14 and 15 of the Agreement, MFM demands: 1) the return of its proprietary materials, 2) that the Wus cease utilizing the MFM trademarks, and 3) that they cease operating a competing business at the franchised location. In addition, MFM feels that it is entitled to an additional seven months of royalties and marketing fund fees of $8,736.00, while the Wus continued to operate in violation of the Agreement and for infringing trademark usage until the forced closure of the shop pursuant to the Court's Preliminary Injunction Order of February 22, 2001. Aside from costs and

attorney's fees, MFM asks the Court to enjoin permanently any further trademark infractions and for a total of $57,408.00 in damages from the Wus.

## ISSUES

There are two issues before the Court. First, whether the Wus violated or materially breached the franchise agreement, and second, whether the Wus' continued actions after MFM's termination of the Agreement constituted a violation of the Lanham Act and unfair competition. The Court will discuss the standards of material breach to the Agreement, which then give rise to issues of violations of the Lanham Act.

## DISCUSSION

### Standard

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the evidence must create more than "'some metaphysical doubt as to the material facts.'. . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be successful in opposing [the motion] only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v.*

*City of Kankakee* 246 F.3d 927, 932 (2001) citing *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-257 (1986). In addition, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, 1999 WL 436589 (N.D. Ill.). Overall, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial. *Mechning v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).

Plaintiffs filed their Motion for Summary Judgment on August 6, 2001, and the defendants failed to respond. After having been given considerable notice, the defendants have still not responded. Therefore, while the Court must view all facts in a light favorable to the non-moving party, the facts are now as stated in the Local Rule 56.1 Statement of Facts submitted by the plaintiffs.

### Material Breach of Franchise Agreement

Pursuant to 815 ILL. COMP. STAT. 705/19 (1987), MFM argues that the Wus' failure to pay or cure any of its royalties or marketing fees in accordance with the Agreement for the three years since June 1997, constituted grounds for "good faith" termination of the

franchise agreement. Specifically, Section 14.2.12 of the Agreement states in pertinent part,

> 14.2 - Except as otherwise provided by applicable law, Franchisee shall be deemed in default under this Agreement and Franchisor may, at its option, terminate this Agreement and all rights granted herein without affording Franchisee any opportunity to cure the default, with such termination to be effective immediately upon the sending of the notice of termination to Franchisee as set forth in the notice . . . upon the occurrence of any of the following events:
>
> . . .
>
> 14.2.12 - Franchisee, in any twelve month period, fails, in three instances, to make franchisee or other payments on the specified due dates;

In addition to Section 14.2 of the Agreement, the *Original Great American Chocolate Chip Cookie Company Inc. v. River Valley Cookies, Limited;* 970 F.2d 273, 278 (7th Cir. 1992) clearly defined that upon timely notice any failure to cure a payment of service fees constitutes material breach of a franchise agreement. *See also Dunkin' Donuts Inc. v. Donuts, Inc.*, 2000 WL 1808517 *5 (N.D. Ill.).

Therefore, the Wus' failure to submit any royalty or marketing fund fees, even after MFM granted the Wus a Mutual Release in June 1997, is an obvious material breach of the underlying franchise agreement and judgment in favor of the plaintiffs is granted. Based on the uncontradicted facts, judgment is entered in favor of

the plaintiffs and against the Wus for the amount of $46,080.00 for breach of the franchise agreement. The Court also grants MFM's Motion for Summary Judgment on MFM's trademark infringement action and permanently enjoins the Wus from the further use of any of MFM's names, trademarks, or logos. Moreover, the Court orders the Wus to return all manuals and other MFM franchise materials.

**Lanham Act**

The Court next considers the Wus' alleged violations of the Lanham Act and their unfair competition practices after MFM's termination of the Agreement on July 22, 2000.

As a franchisor, MFM retains a duty to ensure that its trademarked goods or services are consistent. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989). In its efforts to maintain quality service, MFM prays for a permanent restraining order to enjoin defendants from continued unauthorized use of MFM's service marks, name, and logos. Furthermore, MFM asks the Court to award it the sum of $8,7363.00 in unpaid royalties and marketing fund fees for the Wus continued seven-month use of the MFM trademark after the MFM's termination of the Agreement.

To assess violations of the Lanham Act (15 U.S.C. § 1051 et seq., §§ 1114, 1117 and 1125), MFM must establish that: 1) the marks are registered; 2) the marks were used in commerce by the Wus without MFM's consent; and 3) the unauthorized use of the marks is

likely to cause confusion, mistake, or deceive the public within the meaning of the statute as to its affiliation with MFM. *See Dunkin' Donuts, Inc.* 2000 WL 1808517 at *4 citing *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir. 1983); *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.* 846 F.2d 1079, 1084 (7th Cir. 1988). The key distinction is intent. Only upon showing a trademark breach was committed "with knowledge that such imitation is intended to be used to cause confusion or to cause mistake or to deceive," may recovery include profits or any damages sustained by the plaintiffs, including costs of the action. 15 U.S.C. § 1117(a).

Obviously, MFM retains rights over its U.S. Patent and Trademark Office Number 151,514,952, satisfying the first prong of the test. However, the second and third prongs prove more difficult. While MFM must prove that the Wus' used the MFM marks without their consent, which caused confusion in commerce, the affidavit of Patrick Vanderpool simply states that "with the exception of the removal of the My Favorite Muffin name, the business continued to operate exactly as it had been operating prior to its termination as a My Favorite Muffin franchise," on March 10, 2001. Affidavit of Patrick Vanderpool, p. 1. It is not clear whether the Wus continued to utilize the MFM trademark, logo or muffin manufacturing system after the Court's Preliminary Injunction Order of February 22, 2001. The Court can only

ascertain that a muffin shop operated by the Wus continued in the exact location of their previous franchise.

The failure to establish the last two prongs of a trademark infringement under § 1114 of the Lanham Act results in an inability to establish a violation of the plaintiffs' federal trademark claims. *Servpro Industries, Inc. v. Schmidt,* 1997 WL 158316 *11 (N.D.Ill.). When facts are taken in light of the non-moving party, the Court must assume that the Wus did not violate MFM's trademarks or manufacturing system when the Wus complied with the Court's injunction order, but simply violated the covenant not to compete. Thus, plaintiffs' Motion for Summary Judgment with regard to the trademark violations is denied. Furthermore, the Court denies plaintiffs' request for attorney's costs and fees and an additional $8,736.00 under § 1114 of the Lanham Act due to the Court's lack of finding intent by the Wus to confuse or deceive when they continued their trademark infractions.

However, with regard to the non-compete clause of Section 16, MFM asks the Court to enforce the two-year, twenty-five-mile radius clause of MFM's covenant not to compete. Covenants not to compete are restricted to a standard of reasonableness with relation to restraints on trade or commerce. *Business Electronic Corp. v. Sharp Electronics Corp.* 485 U.S. 717 (1988).

Under *Servpro* and *Oil Express*, there are three legitimate business interests that may be protected under a covenant not to

complete: goodwill, clientele, and confidential information. *Id.* at *9. Covenants will be enforced if they are reasonably necessary to protect an employer's legitimate business interest or to protect the employer from improper or unfair competition. *Oil Express National Inc. v. P & F Express, Inc.*, 1985 WL 3586, *1-2 (N.D.Ill.). However, what is reasonable depends upon the circumstances of each case. *Id.* at *1. The Wus have failed to assert any facts that would allow the Court to make a finding of unreasonableness.

Accordingly, the Court rules that the two-year, twenty-five-mile radius clause in the covenant not to compete is reasonable to protect MFM's clientele and its confidential information. The undisputed facts show that the covenant not to compete was clearly violated by the Wus, requiring the Court to rule in plaintiffs' favor. Therefore, the Court grants plaintiffs' Motion for Summary Judgment with regard to the issue of its covenant not to complete.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Motion for Summary Judgment regarding the material breach of its franchise agreement, but denies summary judgment with regard to its Lanham Act infringements. In addition, the Court grants Plaintiffs' Motion for Summary Judgment on its covenant not compete.

The Court orders the Defendants to pay Plaintiffs the sum of $46,080.00 for their breach of the Agreement, permanently enjoins

Defendants from further use of Plaintiffs' trademarks or service marks and from operating a muffin shop within a twenty-five-mile radius of the subject location.

The Court denies the Plaintiffs' additional demand for payment of $8,736.00 based on Lanham Act violations for the seven-month breach of the Court's preliminary injunction order.

Thus, Summary Judgment is granted in part and denied in part. **IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

Date: April 29, 2002